SASHA G. RAO (SBN 244303)
srao@maynardcooper.com
BRANDON H. STROY (SBN 289090)
bstroy@maynardcooper.com
MAYNARD COOPER & GALE, LLP
Two Embarcadero Center, Suite 1450
San Francisco, CA 94111
Telephone: (415) 646-4702
Facsimile: (205) 254-1999

*Attorneys for Defendant Snapfish, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROTHSCHILD PATENT IMAGING, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**SNAPFISH, LLC,**<br><br>Defendant. | **Case No. 5:22-cv-08296-BLF**<br><br>**DEFENDANT SNAPFISH, LLC'S, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: Thursday, July 6, 2023<br>Time: 9:00 am<br>Location: Courtroom 3, 5th Floor<br>Judge: Hon. Beth Labson Freeman |

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS ...................................................................................2

   A. The Parties .....................................................................................................2

   B. The '797 Patent .............................................................................................3

III.  LEGAL STANDARD ..........................................................................................5

   A. Dismissal Under Federal Rule of Civil Procedure 12(b)(6) is Proper .....................5

   B. A Claim is Patent-Ineligible If It is Directed to an Abstract Idea and If There is No Inventive Concept ................................................................................................7

IV.  ARGUMENT ......................................................................................................8

   A. Claim 16 is representative of all claims of the '797 patent .....................................8

   B. Under Alice Step One, the Claims of the '797 Patent are Directed to an Abstract Idea ..........9

      1.  The '797 Patent Merely Describes a Method of Organizing Human Activity ................9

      2.  The Use of Mobile Devices Fails to Make the '797 Patent Any Less Abstract ............11

   C. Under Alice Step Two, the '797 Patent Lacks an Inventive Concept ...................................13

      1.  The Individual Elements of the Claims Do Not Add an Inventive Concept .................14

         i.  There is No Inventive Concept in the "Receiving" Step ...........................................14

         ii.  There is No Inventive Concept in the "Filtering" Step ...........................................15

         iii.  There is No Inventive Concept in the "Transmitting" Step ....................................16

         iv.  There is No Inventive Concept in Selecting the Second Mobile Device ...............16

      2.  The Claim Elements Considered as an Ordered Combination Also Do Not Add an Inventive Concept ..........................................................................................17

   D. No Question of Fact Exists and Dismissal for Failure to Satisfy 35 U.S.C. § 101 is Proper on the Pleadings ................................................................................................19

   E. Snapfish is Engaged in the Same Activities Described in the Background of the '797 Patent ................................................................................................19

V.  CONCLUSION ..................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>Cases</u>

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) ................................................................. 6

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ................................................................. 8

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) ................................................... 8, 12, 13

*Alice Corp. v. CLS Bank, Int'l*,
   573 U.S. 208 (2014) ....................................................................... Passim

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 6

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
   915 F.3d 743 (Fed. Cir. 2019) ................................................................. 7

*Automated Tracking Solutions, LLC v. Coca-Cola Co.*,
   723 F. App'x 989 (Fed. Cir. 2018) ........................................................... 6

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ............................................................. 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 5

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ......................................................... 6, 19

*Bilski v. Kappos*,
   561 U.S 593 (2010) ............................................................................... 13

*Brown v. Elec. Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) ................................................................. 6

*Chamberlain Grp. v. Techtronic Indus. Co.*,
   935 F.3d 1341 (Fed. Cir. 2019) ............................................................. 16

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) .......................................................... 6, 19

*Cisco Sys., Inc. v. Uniloc USA, Inc.*,
   386 F. Supp. 3d 1185 (N.D. Cal. 2019) ................................................... 7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014)................................................................ 6, 8, 13

*Coop. Entm't, Inc. v. Kollective,*
    544 F. Supp. 3d 890 (N.D. Cal. 2021) .................................................................. 7

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,*
    880 F.3d 1356 (Fed. Cir. 2018)........................................................................... 8

*Electric Power Group, LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016)................................................................... 13, 15

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016)........................................................................... 7

*Free Stream Media Corp. v. Alphonso Inc. ,*
    996 F.3d 1355 (Fed. Cir. 2021).......................................................... 12, 13, 14

*In re Board of Trustees of Leland Stanford Junior University,*
    989 F.3d 1367 (Fed. Cir. 2021)......................................................................... 17

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
    792 F.3d 1363 (Fed. Cir. 2015)................................................................... 10, 11

*Intellectual Ventures I LLC v. Capital One Fin. Corp. ,*
    850 F.3d 1332 (Fed. Cir. 2017)................................................................... 14, 15

*Intellectual Ventures I LLC v. Erie Indemnity Co.,*
    850 F.3d 1315 (Fed. Cir. 2017)................................................................... 11, 12

*Interval Licensing LLC v. AOL, Inc.,*
    896 F.3d 1335 (Fed. Cir. 2018).............................................................. 6, 10, 11

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.,*
    50 F.4th 1371 (Fed. Cir. 2022) ......................................................................... 15

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    566 U.S. 66 (2012) ................................................................................... Passim

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
    521 F.3d 1097 (9th Cir. 2008).............................................................................. 6

*Orcinus Holdings, LLC v. Synchronoss Techs., Inc.,*
    379 F. Supp. 3d 857 (N.D. Cal. 2019) ................................................................. 7

*PersonalWeb Techs. v. Google LLC,*
    8 F.4th 1310 (Fed. Cir. 2021).............................................................................. 7

*Quad City Patent, LLC v. Zoosk, Inc.*,
  498 F. Supp. 3d 1178 (N.D. Cal. 2020) ........................................................ 6

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*,
  2022 WL 794981 (Fed. Cir. Mar. 15, 2022) ............................................. 9, 13

*SAP Am., Inc. v. Investpic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) .................................................................... 6

*Skillz Platform Inc. v. Aviagames Inc.*,
  2022 WL 783338 (N.D. Cal. Mar. 14, 2022) ................................................ 7

*Smart Systems Innovations, LLC v. Chicago Transit Authority*,
  873 F.3d 1364 ............................................................................................. 8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) .................................................................. 17

*Voip-Pal.com, Inc. v. Apple Inc.*,
  411 F. Supp. 3d 926 (N.D. Cal. 2019) .......................................................... 7

*Voit Techs., LLC v. Del-Ton, Inc.*,
  757 F. App'x 1000 (Fed. Cir. 2019) .............................................................. 6

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
  887 F.3d 1376 (Fed. Cir. 2018) .................................................................... 7

*Weisner v. Google LLC*,
  51 F.4th 1073 (Fed. Cir. 2022) .................................................................... 9

**Statutes**

35 U.S.C. § 101 ...................................................................................... Passim

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .............................................. Passim

**PLEASE TAKE NOTICE** that, on July 6, 2023 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the Honorable Beth Labson Freeman located at 280 South 1st Street, San Jose, CA, 95113, Courtroom 3, 5th Floor, pursuant to Fed. R. Civ. P. Rule 12(b)(6), Defendant Snapfish, LLC ("Snapfish") respectfully moves to dismiss with prejudice Plaintiff Rothschild Patent Imaging, LLC's ("Rothschild") Complaint for failure to state a claim upon which relief may be granted. As explained in detail below, Rothschild's Complaint should be dismissed because all of the claims of U.S. Patent No. 8,437,797 ("the '797 patent") are invalid under 35 U.S.C. § 101 for claiming patent-ineligible subject matter.

## I.    **INTRODUCTION**

In its Complaint, Rothschild alleges that Snapfish infringes the '797 patent. The claims of the '797 patent are directed to the fundamental human activity of capturing and sharing digital photographs. To this fundamental activity, the '797 patent purports to add only the use of mobile devices and wireless communications. But these are conventional technologies that perform routine functions and have done so since long before the '797 patent. Adding generic mobile devices and wireless communications are insufficient to transform the abstract idea of capturing and sharing digital photographs into a patent-eligible invention.

The basic idea of capturing and sharing photographs has permeated society since the invention of photography. Following the invention of the digital camera, which long predates the '797 patent, the capturing and sharing of digital images became easier and more widespread. And sharing digital photographs has only increased since then with the ability to capture images with convenient electronic mobile devices and share images over the Internet. The claims of the '797 patent fail both elements of the two-part test set forth by the Supreme Court in *Alice Corp. v. CLS Bank, Int'l*, 573 U.S. 208 (2014) for analyzing patentability under 35 U.S.C. § 101. First, the claims of the patent are directed to an abstract idea: capturing and sharing digital photographs. This is merely another in the myriad line of cases in which courts have found that methods for organizing human activity have been found to be unpatentable under Section 101. Second, the '797 patent does not disclose or add any inventive concept or technological improvement sufficient to transform the otherwise abstract idea of capturing and sharing digital photographs into a patentable invention. It claims only the

application of the abstract idea of capturing and sharing digital photographs using mobile phones and wireless communications.  But it neither claims nor discloses any new technological innovation, or improvement in the way mobile devices or wireless networks operate that enable the capturing and sharing of digital photographs to occur.  Indeed, no such innovation or improvement is necessary. Conventional mobile devices and wireless networks have been able to accomplish the claimed methods since long before the '797 patent was filed.  Indeed, the '797 patent admits that Shutterfly, LLC, Defendant's subsidiary, provided digital photo sharing services that predate the claimed inventions of the patent.  (D.I. 1-1, col. 1, lines 64-67).

And conventional technology performing ordinary functions is insufficient to add an inventive concept that would render the claims patentable.

Here, this Court need look no further than the '797 patent specification which admits that generic image-capturing mobile devices and wireless transmitters already existed, and that individuals were already sharing images over the Internet using a variety of pre-existing applications. (*Id.*, col. 1, lines 34-67; col. 3, lines 27-40).  Thus, no underlying question of fact exists as to the abstract and conventional nature of the claimed invention, and there is likewise no reason why this Court should be unable to decide this issue now.

Because the '797 patent is directed to an abstract idea, and because the patent neither claims nor even discloses any technological improvement or inventive concept, this Court should find the '797 patent ineligible for patent protection under 35 U.S.C. § 101, and dismiss this case with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    STATEMENT OF FACTS

### A.  The Parties

Rothschild is a Texas limited liability company located in Fort Lauderdale, Florida.  (D.I. 1, Complaint ¶ 1).  Plaintiff is the current owner of U.S. Patent No. 8,437,797 (D.I. 1-1), with "the exclusive right to recover for past, present and future infringement."  (D.I. 1 ¶¶ 9-10).

Snapfish is a California limited liability company with its principal place of business in San Francisco, CA.  Snapfish is the parent company of Shutterfly, LLC.  Plaintiff alleges that Snapfish's mobile application infringes at least claim 16 of the '797 patent.  (*Id.* ¶ 15).

**B.  The '797 Patent**

The '797 patent is titled "Wireless Image Distribution System and Method."  The '797 patent claims a system and method for "distributing at least one digital photographic image."  (D.I. 1-1, Abstract).  The patent admits certain well-understood, routine and conventional practices that preexisted the alleged inventions of the '797 patent.  Specifically, the patent admits the routine use of various electronic devices such as cameras and mobile devices ("cellular telephone" or "personal digital assistants") to capture digital photographic images.  (*Id.*, col. 1, lines 34-39).  The patent also admits that it was well-understood and routine for individuals to upload and share digital photographic images directly to other individuals over the Internet ("e-mailing them directly" or uploading to "the World Wide Web").  (*Id.*, col. 1, lines 52-63).  Prior to the filing of the '797 patent, many websites and companies, including Shutterfly, LLC ("Shutterfly"), of which Defendant is the parent company, provided services for uploading and sharing digital photographs.  (*Id.*, col. 1, lines 64-67).  The '797 patent describes these conventional methods in the prior art as "not ideal" because the digital photographs are oftentimes "never sent, uploaded, or shared as initially intended."  (*Id.*, col. 2, lines 1-2).  Additionally, the patent discloses that "even in the event the digital photographic images are in fact uploaded to the web servers, it may take days, weeks, or even months to do so," and that using existing photo sharing services may lead to "excessive, unnecessary frustration and aggravation."  (*Id.*, col. 2, lines 2-7).

The '797 patent purports to solve these alleged problems by providing "an image distribution system and method which is structured to dispose one or more capturing devices in a communicative relation with one or more receiving devices for instantaneous, automatic, and/or selective distribution of images."  (*Id.*, col. 2, lines 8-12).  For example, the claimed invention is exemplified in Figure 10 of the '797 patent:



Claims 1, 9, and 16 of the '797 patent, which are illustrative of the remaining claims, similarly recite the basic framework shown in Figure 10:

**Claim 1**:

An image-capturing mobile device, comprising

    a wireless receiver;

    a wireless transmitter; and

    a processor operably connected to the wireless receiver and the wireless transmitter, wherein the processor is configured to initiate and/or perform

        receiving a plurality of photographic images;

        filtering the plurality of photographic images using a transfer criteria; and

        transmitting, via the wireless transmitter and to a second mobile device, the filtered plurality of photographic images, wherein

the transfer criteria is a geographic location of the image-capturing mobile device.

**Claim 9**:

A method preformed [*sic*] by an image-capturing mobile device, comprising

---

receiving a plurality of photographic images;

filtering the plurality of photographic images using a transfer criteria; and

transmitting, via a wireless transmitter and to a second image capturing device, the filtered plurality of photographic images, wherein

the transfer criteria is a geographic location of the image-capturing mobile device.

**Claim 16**:

A method performed by an image-capturing mobile device, comprising

receiving a plurality of photographic images;

filtering the plurality of photographic images using a transfer criteria; and

transmitting, via a wireless transmitter and to a second image capturing device, the filtered plurality of photographic images, wherein

the image-capturing mobile device and the second mobile device are disposed in a selectively paired relationship with one another based upon an affinity group associated with the second mobile device.

The claims are all directed to the abstract idea of capturing and sharing select images with other individuals. For example, in claims 9 and 16, the abstract idea is embodied by the claimed methods of receiving, filtering, and transmitting digital photographs. And similarly, in claim 1, the same abstract idea is recited by claiming an "image-capturing mobile device" that is used to perform the same method. Common to all the claims is that (1) images are captured; (2) captured images are selected based on some criteria; and (3) selected images are shared via a generic mobile device over a generic wireless network to a second generic mobile device.

The remaining claims of the '797 patent are no different. None of them claim anything other than the image capturing, selecting, and transmitting steps recited above, example criteria used for the selection, or generic mobile devices that can be used to perform the claimed methods.

## III.   LEGAL STANDARD

### A.  Dismissal Under Federal Rule of Civil Procedure 12(b)(6) is Proper

A party may move to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must allege "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (factual allegations must be sufficient to move claims "'across the line from conceivable to plausible'") (quoting *Twombly*, 550 U.S. at 570). In deciding a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations in the complaint as true and construes the pleadings in the light most favorable to the plaintiff. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013). Nevertheless, dismissal under Rule 12(b)(6) is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). However, "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *Id*. Determining patent eligibility at the Rule 12(b)(6) stage is appropriate "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). "In some cases . . . the factual question of '[w]hether the claim elements or the claimed combination are well-understood, routine, [or] conventional' may 'be answered adversely to the patentee based on the sources properly considered on a motion to dismiss, such as the complaint, the patent, and the materials subject to judicial notice.'" *Quad City Patent, LLC v. Zoosk, Inc.*, 498 F. Supp. 3d 1178, 1184 (N.D. Cal. 2020) (quoting *Aatrix Software*, 882 F.3d at 1128). Where the court has a "full understanding of the basic character of the claimed subject matter," the question of patent ineligibility may be resolved on the pleadings. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

Even after *Berkheimer*, the Federal Circuit routinely affirms dismissals of cases on unpatentable subject matter grounds, particularly in cases where there are no underlying factual issues regarding well-understood, routine and conventional practices in the field of the invention. *See, e.g., SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161, 1169-70 (Fed. Cir. 2018); *Voit Techs., LLC v. Del-Ton, Inc.*, 757 F. App'x 1000, 1004 (Fed. Cir. 2019); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 777 (Fed. Cir. 2019); *Automated Tracking Solutions, LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995-96 (Fed. Cir. 2018);

*Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1386 (Fed. Cir. 2018); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1348 (Fed. Cir. 2018); *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 757 (Fed. Cir. 2019); *PersonalWeb Techs. v. Google LLC*, 8 F.4th 1310, 1319 (Fed. Cir. 2021).

Where, as here, there are no underlying factual issues regarding well-understood, routine and conventional practices in the field of the invention, courts in the Northern District of California routinely dismiss patent claims directed to unpatentable subject matter under Section 101. *See, e.g., Skillz Platform Inc. v. Aviagames Inc.*, No. 21-CV-02436-BLF, 2022 WL 783338, at *22-23 (N.D. Cal. Mar. 14, 2022) (Freeman, J.) (finding claims directed to the idea of storing, communicating, and displaying data invalid under § 101); *Coop. Entm't, Inc. v. Kollective Tech.*, 544 F. Supp. 3d 890 (N.D. Cal. 2021) (finding claims directed to the preparation and transmission of content to peers through a computer network invalid under § 101); *Cisco Sys., Inc. v. Uniloc USA, Inc.*, 386 F. Supp. 3d 1185, 1202 (N.D. Cal. 2019) (finding claims directed to sorting, ranking, and selecting radio stations to operate a communication system invalid under § 101); *Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 882-83 (N.D. Cal. 2019) (finding claims directed to personal data backup for mobile customer premises equipment invalid under § 101); *Voip-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 974-975 (N.D. Cal. 2019), *aff'd*, 828 F. App'x 717 (Fed. Cir. 2020) (finding claims directed to routing a communication based on participant identifiers invalid under § 101).

### B. A Claim is Patent-Ineligible If It is Directed to an Abstract Idea and If There is No Inventive Concept

Under Section 101, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216. In *Alice*, the Supreme Court established a two-step inquiry for determining patent eligibility under 35 U.S.C. § 101. *Id.* at 217-18.

Under *Alice* step one, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. Under this step, courts may evaluate "whether the claims are directed to a specific improvement in the capabilities of computing devices, or, instead, 'a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *Core Wireless Licensing S.A.R.L. v.*

*LG Elecs., Inc.*, 880 F.3d 1356, 1361-62 (Fed. Cir. 2018) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)).  To determine whether the claims are directed to an abstract idea, courts look to the "'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."  *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016).

If the claim contains an abstract idea, the court proceeds to *Alice* step two, which examines whether there is "an 'inventive concept' – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (internal quotations omitted).  The court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012)).

## IV.   ARGUMENT

The claims of the '797 patent are invalid under Section 101 because they are all directed to the same abstract idea, and contain no inventive concept.  The claims thus fail both steps of the two-step inquiry set forth in *Alice*.

### A.  Claim 16 is representative of all claims of the '797 patent

As a threshold matter, courts may consider representative claims to analyze Section 101 subject-matter eligibility where all the claims are "substantially similar and linked to the same abstract idea." *Content Extraction,* 776 F.3d at 1348 (citation omitted).  In *Smart Systems Innovations, LLC v. Chicago Transit Authority*, the Federal Circuit explained that: "'[b]ecause the [relevant] system claim[s] and method claim[s]' in the [asserted] patents 'contain only minor differences in terminology but require performance of the same basic process, ... they should rise or fall together.'" 873 F.3d 1364, 1368 n. 7 (Fed. Cir. 2017) (quoting *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013)).

Here, claim 16 (the lone claim alleged to be infringed in the Complaint) is representative of all the claims of the '797 patent for purposes of the Section 101 analysis.  Indeed, the same abstract idea of capturing and sharing digital photographs is claimed throughout the entire patent, either in the form of

methods claiming exactly that (claims 9, 13, 16), or in the form of system claims which merely recite generic mobile devices and generic wireless networks used to perform the same method (claims 1, 5, 6, 8.).   The dependent claims also fail to add any meaningful limitations to the claims, and instead merely recite various criteria for selecting digital photographs and mobile devices with which to share those photographs.  For example, defendant claim 2 recites that the receiving mobile device is selected based on its geographic location relative to the transmitting mobile device.  And dependent claim 11 recites that the captured photographs are selected for transfer based on the identification of a particular subject in the photograph.    These minor variations do nothing to change the abstract nature of the claims. Fundamentally, each of them is directed to the same abstract idea of capturing and sharing digital photographs.  The selection of digital photographs to be shared, and the selection of whom to share them with do not alter this abstract idea. Accordingly, all claims of the '797 patent should fall together on subject-matter eligibility because they are all directed to the same abstract idea.

### B. Under *Alice* Step One, the Claims of the '797 Patent are Directed to an Abstract Idea

The '797 patent is directed to the abstract idea of capturing and sharing digital photographs, a fundamental practice of organizing human activity.  The Federal Circuit has routinely found such methods to be abstract ideas.  Moreover, there is no technical solution or technological improvement in the '797 patent because the claims simply recite the use of generic mobile devices without any technological improvements either to the devices themselves, or to the method by which the devices communicate.  Thus, the '797 patent is directed to an abstract idea which fails *Alice* step one.

### 1. The '797 Patent Merely Describes a Method of Organizing Human Activity

The Supreme Court and the Federal Circuit have repeatedly found that claims involving methods of organizing human activity are directed to an abstract idea.  *See*, *e.g.*, *Weisner v. Google LLC*, 51 F.4th 1073, 1083 (Fed. Cir. 2022) ("Automation or digitization of a conventional method of organizing human activity like the creation of a travel log on a computer does not bring the claims out of the realm of abstractness"); *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 2021-1906, 2022 WL 794981, at *2 (Fed. Cir. Mar. 15, 2022) (affirming dismissal when the claims were directed to the abstract idea and method for organizing human activity of using credentialing processes); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367-68 (Fed.

Cir. 2015) (collecting cases).

For example, in *Interval Licensing LLC v. AOL, Inc.*, the claims covered an "attention manager" which displayed images to a user when the user was not engaged in a primary interaction or in an area not used by the primary activity. 896 F.3d 1335, 1338 (Fed. Cir. 2018). In finding that the claims were abstract, the Federal Circuit determined that the focus of the claims was to provide information to a person without interfering with that person's primary activity, which on its own is an abstract idea and a basic, longstanding human practice. *Id.* at 1344. In addition, because the claims recited "generic and conventional information acquisition and organization steps that [were] connected to, but [did] not convert, the abstract idea," the claims were thus directed to an abstract idea. *Id.* at 1346. "'Simply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable.'" *Id.* (quoting *Mayo*, 566 U.S. at 82).

The claims of the '797 patent are even more basic than those in *Interval Licensing.* The '797 patent claims recite a method using a generic image-capturing mobile device wherein the images are captured by the device, filtered based on select criteria (chosen by the human user), and transmitted via a wireless transmitter to a second mobile device based on some other select criteria. Removing the use of generic mobile devices and wireless communications leaves only capturing, selecting, and transmitting images. The '797 patent admits that all of these elements are longstanding and routinely performed human activities.

First, the Background of the Invention of the '797 patent admits that "[h]istorically, photography, which includes the capturing of still and/or moving images, has been the source of interest and attention for many individuals." (*Id.*, col. 1, lines 23-25). Thus, the '797 patent acknowledges that capturing images ("receiving" the images via a generic image-capturing mobile device) is a historic human activity. The '797 patent goes on to admit:

> Oftentimes, groups of individuals appearing in a proximate location to one another find themselves capturing or attempting to capture digital photographic images of the same or similar object(s), scenery, people, etc. Moreover, these groups of individuals are often friends, family and/or acquaintances that have the desire to share, distribute, and/or obtain copies of the digital photographic images captured by one another.

(*Id.*, col. 1, lines 44-51).  Thus, selecting images based on location, object, scenery, people, or other criteria ("filtering" images based on a select criteria) and distributing those photos to a select group of people ("transmitting" the images to another selected device based on an affiliation with a social group) are also longstanding human activities.  Like in *Interval Licensing*, the recitation of the generic and conventional steps of receiving, filtering, and transmitting images cannot make the abstract idea of distributing images patentable.

Second, the '797 patent also acknowledges that "it is rather common . . . for photographers or individuals" to distribute the photos "by e-mailing them directly to the other individuals and/or uploading the image(s) to an accessible location on the World Wide Web." (*Id.*, col. 1, lines 57-64). Therefore, transmitting images over the Internet is also a common human activity.

Third, the specification further discloses that the claimed devices communicate with each other through already-established wireless networks, including "Bluetooth, infrared ("IR"), and/or other personal area networks ("PAN")" and "a local area network ("LAN"), wide area network ("WAN"), satellite, WiFi, cellular, and/or the World Wide Web accessible via an Internet Protocol or other like protocols." (*Id.*, col. 3, lines 27-40).  As such, use of a wireless transmitter to communicate between generic mobile devices is also a well-established, routine human activity.

The disclosures of the '797 patent make clear that capturing and sharing select images to a subset of individuals is nothing more than a method of organizing human activity.  This is not changed by performing the method using conventional, generic hardware.  Therefore, the '797 patent is directed to the abstract idea of organizing human activity, which is unpatentable subject matter.  Just as in *Interval Licensing* and countless other cases, the '797 patent fails *Alice* step one.

### 2.   The Use of Mobile Devices Fails to Make the '797 Patent Any Less Abstract

Attempts to limit the invention "to a particular field of use or technological environment, such as the Internet" do not render an otherwise abstract idea patentable.  *Capital One Bank*, 792 F.3d at 1366 (Fed. Cir. 2015).  For example, in *Intellectual Ventures I LLC v. Erie Indemnity Co.*, the Federal Circuit found that the claims at issue were directed to the abstract idea of remotely accessing user specific information. 850 F.3d 1315, 1330 (Fed. Cir. 2017).  Though the asserted claims included a "mobile interface," the court found that the claimed invention failed to recite any unique delivery of information

through the mobile interface or describe how the mobile interface communicates with other devices, other than its "broadly recited function." *Id.* Thus, the court concluded that the "the mobile interface here does little more than provide a generic technological environment to allow users to access information." *Id*; *see also Affinity Labs of Texas*, 838 F.3d at 1258-59 (finding claims directed to wirelessly providing regional broadcast content to out-of-region recipients using cellphones were abstract because the "Supreme Court and this court have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract")

Similarly, in *Free Stream Media Corp. v. Alphonso Inc.*, the claimed invention involved the method of (1) gathering information about television users' viewing habits; (2) matching that information with other content; and (3) sending that content to a second device, which the Federal Circuit found was directed to the abstract idea of targeted advertising. 996 F.3d 1355, 1361-62 (Fed. Cir. 2021). The court was unconvinced by the patentee's argument that the claimed invention allowed devices to communicate in a novel manner because the asserted claims failed to describe how the communication was achieved. *Id.* at 1363-64. Thus, the claims were found to be directed to an abstract idea because they "merely improve[d] the abstract idea of targeted advertising" and were "not directed to an improvement of a technology or a creation of a new computer functionality." *Id.* at 1365.

Under *Erie Indemnity* and *Free Stream Media*, the use of generic mobile devices and wireless communications in the claims of the '797 patent does not render the '797 patent any less abstract. While the '797 patent purports to provide an image distribution system and method where the devices are in a "communicative relation" "for instantaneous, automatic, and/or selective distribution of images," the claims fail to describe any unique delivery of the images through the mobile devices or any improvement to the way in which the devices communicate. (D.I. 1-1, col. 2 lines 8-12). Instead, the claims merely recite that the images are transmitted via a wireless transmitter. And the specification simply discloses that the "communicative relation" between the devices is performed via wireless networks such as "cellular, and/or the World Wide Web accessible via an Internet Protocol or other like protocols," which the '797 patent itself describes is conventional, pre-existing technology. (*Id.*, col. 3, lines 27-40). The claims of the '797 patent are therefore directed to performing the abstract idea of capturing and sharing images using mobile devices and wireless

communications, and not to any improvement of any technology or creation of any new functionality within the mobile devices.  As courts have made clear, the use of mobile devices simply provides a generic technological environment for users to distribute the images, which fails to render to claims any less abstract.

### C.  Under *Alice* Step Two, the '797 Patent Lacks an Inventive Concept

Because the claims of the '797 patent are directed to an abstract idea, in order to be patentable, they must contain an inventive concept "sufficient to ensure that the claim amounts to 'significantly more' than the abstract idea itself."  *Content Extraction*, 776 F.3d at1347 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 222).  These do not.  At step two, courts look "more precisely at what the claim elements add" to identify an inventive concept.  *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  But no such concept can be identified here.

Transforming an abstract idea into a patent-eligible application requires more than the performance of "well-understood, routine, [and] conventional activities previously known to the industry." *Content Extraction*, 776 F.3d at 1347-48 (quoting *Alice*, 573 U.S. at 225).  Simply reciting the use of conventional components and functions generic to the technology to implement an abstract idea is insufficient.  *Free Stream Media*, 996 F.3d at 1366.  For example, in *Affinity Labs*, the Federal Circuit found that the asserted claims lacked any inventive concept because they "simply recite[d] the use of generic features of cellular telephones, such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea."  838 F.3d at 1262; *see also Repifi Vendor Logistics*, 2022 WL 794981, at *3 ("[B]oth Supreme Court precedent and our court's precedent make clear that automation of a long-standing human process cannot be the inventive concept because such automation is itself an abstract idea").

In addition, a patent-eligible claim requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72).  Nor does adding insignificant post-solution activity, such as limiting the claim to a particular technological environment, save it from patent ineligibility.  *Mayo*, 566 U.S. at 79; *see also Bilski*, 561 U.S. 593, 612 (2010) ("[L]imiting an abstract idea to one field of use…[does] not make the concept patentable.").  Describing

"the functions of the abstract idea itself, without particularity . . . is simply not enough under step two." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017).  In evaluating whether claims include an inventive concept in order to survive step two of the *Alice* inquiry, courts must "consider the elements of each claim both individually and 'as an ordered combination.'" *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 79).  Under both frames of analysis, the '797 patent fails to add an inventive concept under *Alice* step two.

### 1.   The Individual Elements of the Claims Do Not Add an Inventive Concept

The individual elements of the claims of the '797 patent lack any inventive concept.  Instead, the '797 patent itself admits that the claim elements use conventional components and generic functions to implement the abstract idea of capturing and sharing digital photographs.

Illustratively, as detailed below, the specification of the '797 patent admits that each of the elements of claim 16 utilizes well-understood, routine, and generic components.  Moreover, the method of claim 16 is performed by a generic image-capturing mobile device.  The '797 patent acknowledges that such a device is conventional because it admits that "a number of electronic devices, such as . . . cellular telephones, personal digital assistants ("PDA"), etc., include mechanisms and/or various devices for capturing one or more still and/or moving digital photographic images." (D.I. 1-1, col.1, lines 35-39).  As such, the use of a conventional component like the claimed mobile device to implement the claimed methods of the '797 patent adds no inventive concept to the claim. *Free Stream Media*, 996 F.3d at 1366.

The absence of an inventive concept is explained below.  While claim 16 is used here as an illustrative example, each of the claims contains the same essential steps of "receiving", "filtering", and "transmitting" with the filtering and/or transmitting steps being based on the selection of certain "criteria."

### i.   There is No Inventive Concept in the "Receiving" Step

Element [i] of illustrative claim 16 describes the generic function of "receiving a plurality of photographic images."  As already discussed and disclosed in the '797 patent, capturing images with a mobile device is a routine function that adds no inventive concept.  Using Plaintiff's example, the user "receives" the photos by accessing the mobile device's photo gallery.  (D.I. 1-2 at 2).  Simply

accessing images taken by an image-capturing device is yet another routine function, and neither the claims nor the specification suggests anything more.  Element [i] therefore adds no inventive concept.

### ii.    There is No Inventive Concept in the "Filtering" Step

Element [ii] of illustrative claim 16 describes the generic function of "filtering the plurality of photographic images using a transfer criteria."  This element recites only a mental process whereby a person can select digital photographs based on certain preferences or criteria.  Mental processes such as these are abstract ideas, and the element contains nothing more.  *See Electric Power Group,* 830 F.3d at 1355 ("But merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas").

The specification confirms that filtering images using transfer criteria lacks an inventive concept.  The '797 patent specification does not provide any indication that the filtering step is performed in any inventive manner.  Instead, the '797 patent discloses that the device "is structured to filter the digital photographic images" and generally describes that the device "may comprise or otherwise be associated" with transfer criteria which is then "compared" to the images.  (D.I. 1-1, col. 9, lines 32-40).  Such a broad description fails to provide any specific technical information as to *how* the filtering is performed, and therefore lacks an inventive concept.  *See Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1382 (Fed. Cir. 2022) (finding the claims lacked an inventive concept when they merely restated the functions of the generic components without describing how the functions were performed); s*ee also Capital One Fin. Corp.*, 850 F.3d at 1341.

Nor does the use of transfer criteria add an inventive concept.  The claimed transfer criteria consists of basic identifiers such as "object recognition, locational information, time, date, image name, etc." (D.I. 1-1, col. 2, lines 40-43).  The transfer criteria are thus simply categories by which any human would and could naturally categorize images, mentally, using a pen and paper, or otherwise.  The Background of the Invention also describes these categories in the context of images that other individuals would want: "[G]roups of individuals appearing in a proximate location of one another find themselves capturing or attempting to capture digital photographic images of the same or similar object(s), scenery, people, etc." (*Id.*, col. 1, lines 44-47).  Thus, transfer criteria similarly

fails to add an inventive concept to claim 16.

### iii.    There is No Inventive Concept in the "Transmitting" Step

Element [iii] of illustrative claim 16 describes the generic function of "transmitting, via a wireless transmitter and to a second image capturing device, the filtered plurality of photographic images." The '797 patent specification discloses that the device may communicate with other devices through well-known and conventional wireless networks. (*Id.*, col. 3, lines 27-40). And the specification further acknowledges that individuals had the ability "to share or otherwise distribute the image(s), for instance by e-mailing them *directly* to the other individuals." (*Id.*, col. 1, lines 61-63) (emphasis added). Thus, communicating any photographic images over a wireless network simply recites a conventional use for the two generic mobile devices. Element [iii] adds no inventive concept. *See Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1349 (Fed. Cir. 2019) ("Wireless communication cannot be an inventive concept here, because it is the abstract idea that the claims are directed to").

### iv.    There is No Inventive Concept in Selecting the Second Mobile Device

Element [iv] of illustrative claim 16 merely describes the mobile devices as being "in a selectively paired relationship with one another based upon an affinity group associated with the second mobile device." The '797 patent discloses that the affinity group may be specified on the device itself using generic components of the device such as "a keyboard, touch pad, touch screen, voice recognition, or other input means located on or in a communicative relation with the device" (D.I. 1-1, col. 7, lines 22-26), or by updating or synchronizing the device via conventional wired or wireless means with an affinity group (*Id.*, col. 7, lines 26-31). The specification also discloses that the affinity group may be synchronized via the World Wide Web to third-party social networks such as Myspace, Facebook, Friendster. (*Id.*, col. 7, lines 37-41). Thus, the entirety of this element is limited to using conventional components of a mobile device to distribute photos to third-party social networks using the World Wide Web. There is no inventive concept in using a generic mobile device to access and share information using the Internet. Moreover, the Background of the Invention already discloses that users can share images "to an accessible location on the World Wide Web." (*Id.*, col. 1, lines 62-63). Element [iv] only adds that the accessible location is just another third-party

social network, with no claimed improvement to the social network itself or to the means of accessing it.  This is not a technological improvement at all, and thus cannot rise to the level of an inventive concept.

As detailed above, none of the individual elements of claim 16 contains an inventive concept, and cannot be saved from a finding that the claims are directed to an abstract idea.

### 2. The Claim Elements Considered as an Ordered Combination Also Do Not Add an Inventive Concept

An abstract idea may be sufficiently inventive if the claims provide a "non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).  Courts have, however, found that no inventive concept exists where a "claim uses a conventional ordering of steps . . . with conventional technology to achieve its desired results."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).

In *In re Board of Trustees of Leland Stanford Junior University*, the Federal Circuit found the claims patent ineligible when they were directed to an abstract mathematical calculation, and the ordered combination accomplished the mathematical analysis itself (receiving data, executing the calculations, and storing the data).  989 F.3d 1367, 1374 (Fed. Cir. 2021).  In addition, the fact that the combination yielded a greater number of results than previously achievable was not enough to transform the claim into a patent eligible application.  *Id.*  Here, claim 16 is directed to the abstract idea of capturing and sharing digital photographs.  As in *Stanford*, the ordered combination of elements here does nothing more than accomplish the abstract human activity itself, namely, receiving the images, filtering or otherwise selecting the images, and sharing the images to another mobile device.  This cannot transform the claims into patent eligible subject matter.

The '797 patent further confirms that there is no unconventional arrangement or ordered combination of steps beyond what is already well-known that could possibly provide an inventive concept.  Figure 10 of the '797 patent illustrates exactly how conventional steps are used to achieve the abstract idea of distributing images:



As shown in the figure, all that is required by the claims is to capture or otherwise receive images, and then distribute the images. When and how the devices are paired are inconsequential, as demonstrated in illustrative claim 16, in which the criteria used for selection of the second mobile device is not required to be used in any particular order with respect to the remaining elements of the claim. Moreover, the remaining elements of the claimed method **must** proceed in such a conventional manner. In other words, the images must first be captured or otherwise received so that the user can select preferred images for distribution, and selection of images to be shared must likewise occur before the sharing itself. This is true no matter how the images are distributed. Thus, there is nothing unconventional about the claimed order of steps that can render any of the claims sufficiently inventive.

In sum, the elements of the claims of the '797 patent use conventional image-capturing mobile devices to capture images, and conventional functions of the mobile devices to filter and distribute the images to social media networks using well-known technology. Taken individually or as an ordered combination, nothing in the claimed method provides any inventive concept sufficient to transform the claims into patent eligible subject matter.

**D.  No Question of Fact Exists and Dismissal for Failure to Satisfy 35 U.S.C. § 101 is Proper on the Pleadings**

This case does not present any question of fact to preclude resolution of whether the '797 patent is invalid under Section 101 at this stage.  Based on the claim language of the '797 patent, and the admissions contained in the specification of the '797 patent, the present case is distinguished from the facts of *Berkheimer*.  In *Berkheimer*, the Federal Circuit found a factual dispute at the motion for summary judgment stage as to whether the invention described well-understood, routine, and conventional activities for certain claims that "captured" a specific inventive feature expressly described in the specification. 881 F.3d at 1369; s*ee also ChargePoint, Inc*., 920 F.3d at 773 (reaffirming after the *Berkheimer* decision that "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)") (citation omitted).  Specifically, the Federal Circuit held that the specification described "an inventive feature that stores parsed data in a purportedly unconventional manner."  *Berkheimer*, 881 F.3d at 1369.  The specification of the '797 patent does not describe any inventive feature, and instead recites the use of conventional functions of conventional devices to perform conventional human activities.  Nor do the claims recite any inventive feature, and similarly recite broad functions of generic devices to implement an abstract idea.  The Complaint similarly fails to recite any inventive feature.  The disclosures of the '797 patent make clear that no amount of fact discovery that can remedy the deficiencies.

Therefore, because there can be no genuine question of fact as to whether the '797 patent claims only well-understood, routine and conventional activities, resolution on the pleadings is appropriate.

**E.  Snapfish is Engaged in the Same Activities Described in the Background of the '797 Patent**

The Background of the Invention of the '797 patent describes the pre-existing services of Snapfish's subsidiary, Shutterfly.  The specification describes that technology and services already existed which allowed individuals to email and/or upload images to a website.  (D.I. 1-1, col. 1, lines 61-63).  As an example, the specification further describes that individuals could use Shutterfly's services for uploading and sharing photographs.  (*Id.*, col. 1, lines 64-67; col. 6, lines 47-51).  In addition, the '797 patent claims priority to U.S. Patent No. 8,204,437 (the "'437 patent"), which was

filed on August 8, 2008.  (*Id.*, Related U.S. Application Data).  The '437 patent is attached hereto as **Exhibit A**.  The specification of the '437 patent contains the same admissions about Shutterfly's services.  (Ex. A, col. 1, lines 57-60; col. 6, lines 40-44).  A screen capture of Shutterfly's website dated January 15, 2008 is provided hereto as **Exhibit B**, and is available at http://web.archive.org/web/20080115023458/http://www.shutterfly.com:80/learn/collections.jsp.

As can be seen in Exhibit B, the '797 patent accurately disclosed that Shutterfly already provided web-based photo-sharing services.  Shutterfly also provided users the ability to share a collection of digital photographs with groups of people.  (Exhibit B).  Here, Snapfish is merely providing the same type of services that Shutterfly has provided since before this patent (or its parent application) was filed.  Plaintiff cannot accuse Snapfish of "infringing" activities that the '797 patent admits were already in existence.

Moreover, as previously discussed, the '797 specification further admits that image-capturing mobile devices already existed.  (D.I. 1-1, col. 1, lines 34-39).  Image-capturing mobile devices with Internet access were also in existence prior to August 8, 2008.  For example, the Apple iPhone was first released in June 29, 2007.  *See Apple Reinvents the Phone with the iPhone*, Apple Newsroom Press Release (Jan. 9, 2007), *https://www.apple.com/newsroom/2007/01/09Apple-Reinvents-the-Phone-with-iPhone/.*  As such, websites like Shutterfly's were already accessible through image-capturing mobile devices.  Indeed, Snapfish itself provided the same services prior to the claimed priority date.  Screen captures of Snapfish's website dated January 3, 2008 and March 20, 2008 are provided hereto as **Exhibit C**, and are available at http://web.archive.org/web/20080115023458/http://www.shutterfly.com:80/learn/collections.jsp and http://web.archive.org/web/20080103182519/http://www.snapfish.com:80/cameraphones, respectively.  As shown in Exhibit C, Snapfish was accessible "from any phone with an Internet browser," and images could be added directly from a camera phone and shared to a friend's phone.  (Exhibit C at 1).  Users were also able to send photos to groups of people.  (*Id.* at 2).

Plaintiff cannot simply take the abstract idea of capturing and sharing digital photographs and say "apply it" with a mobile device.  *Alice*, 573 U.S. at 221.  Even if this were allowed, which it is not, the '797 patent adds nothing new because individuals were already able to capture and share digital

photographs through mobile devices.  The '797 patent has no patentable claims, and must be invalidated in its entirety.

## V.     **CONCLUSION**

The Court should dismiss Plaintiff's Complaint because it seeks to assert an invalid patent directed to an abstract idea that is patent ineligible subject matter.  There is no inventive concept in the '797 Patent that would save it from patent ineligibility.


Dated: March 9, 2023                         Respectfully submitted,

                                             MAYNARD COOPER & GALE, LLP
                                             By  */s/ Sasha G. Rao*
                                             SASHA G. RAO (SBN 244303)
                                             srao@maynardcooper.com
                                             BRANDON H. STROY (SBN 289090)
                                             bstroy@maynardcooper.com
                                             MAYNARD COOPER & GALE, LLP
                                             Two Embarcadero Center, Suite 1450
                                             San Francisco, CA 94111
                                             Telephone: (415) 646-4702
                                             Facsimile: (205) 254-1999


                                             *Attorneys for Defendant Snapfish, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2023, I electronically filed the DEFENDANT SNAPFISH, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES and accompanying supporting papers using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of March, 2023 in Los Altos, California.

            /s/ Sasha G. Rao
            Sasha G. Rao